## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY HANNON,

                    *Plaintiff*,

*v.*

M. TUZAS,

                    *Defendant*.

_____/

Case No. 2:23-cv-12250

Jonathan J.C. Grey
United States District Judge

Patricia T. Morris
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## TO DENY DEFENDANTS' MOTION FOR SUMMARY
## JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 16)

### I.    RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that Defendant M. Tuzas' motion for summary judgment (ECF No. 16) be **DENIED**.  If adopted, the Undersigned will enter a scheduling order setting deadlines for the completion of discovery and the submission of dispositive motions.

### II.    REPORT

#### A.    Background

In his *pro se* complaint, Plaintiff Anthony Hannon alleges that Tuzas has continuously denied his right to attend Islamic prayer services.  (ECF No. 1).  Hannon is incarcerated at the Saginaw Correctional Facility ("SRF").  (*Id.* at PageID.5).  Tuzas is the acting chaplain at SRF.  (*Id.*).

1

Hannon is a Muslim and like other Muslims, he follows the guidance of the Quran. (*Id.* at PageID.6). The Quran requires individuals to attend congregational prayer on Fridays. (*Id.*). Hannon has attended such prayer services during his twenty-four years of incarceration. (*Id.*).

On November 14, 2022, Hannon wrote a letter to Tuzas requesting to attend the Islamic prayer service on Friday. (*Id.*). He also informed Tuzas that the prayer service needed to be rescheduled so it would start after noon. (*Id.*). In a November 18, 2022 response, Tuzas wrote, " 'I am the chaplain and I can change whatever religious times I choose to.' " (*Id.*). Tuzas also sent Hannon a memorandum dated June 4, 2022, reflecting that only the time for the Islamic prayer service had been changed. (*Id.*).

On November 23, 2022, Hannon wrote to Tuzas again. (*Id.*). This time Hannon explained that the Quran required prayers to take place at specific times of day. (*Id.*). Tuzas' November 27, 2022 response stated, " 'I don't care what the Quran says, you will pray when I say pray.' " (*Id.*). Hannon filed a grievance against Tuzas on December 4, 2022. (*Id.*).

On December 23, 2022, Hannon asked Tuzas why he had not been permitted to attend the Friday prayer service. (*Id.* at PageID.7). Tuzas responded, " 'You wrote a grievance on me, and when you write a grievance on me you aint got shit coming. That's why you not on there.' " (*Id.* (sic throughout)). Tuzas denied

2

Hannon the right to participate in Friday prayer service for the following nine months. (*Id.*).

## B.    Grievances

Tuzas attached Hannon's Step III Grievance Report as an exhibit to his motion for summary judgment. (ECF No. 16-3, PageID.63–65). He highlights two grievances that are relevant to this lawsuit: SRF-22-12-1083-28I (hereinafter, "SRF-1083") and SRF-23-01-0012-28B (hereinafter, "SRF-12"). (*Id.* at PageID.63).

Hannon filed a Step I grievance form for SRF-1083 on December 4, 2022. (*Id.* at PageID.72). He named "the chaplain" and provided an incident date of November 30, 2022. (*Id.*). Hannon wrote that on December 2, 2022, he told Sergeant Cunningham about the ongoing dispute between Hannon and Tuzas over Friday prayer service. (*Id.*). Hannon also told Sergeant Cunningham that he had written to Tuzas on November 27, 2022, but had yet to receive a response. (*Id.*). Hannon explained the problem as follows:

> The chaplain at SRF is denying me the right to [practice] my religion Al-Islam. The chaplain has took [sic] it upon himself to change the time of the religion. The Quran states in Surah 4:103 ". . . for such prayers are enjoined on believers at stated times." No one can change the prayer times. In Surah 30:17[,] the Quran explains that the Zuhr prayer starts after noon. On the Muslim prayer schedule for the Saginaw area[,] the prayer don't [sic] start until after 12:27 pm. The chaplain is disrespecting the Muslims['] religion by changing the time [to one] that[']s best for him.

(*Id.* (capitalization modified throughout)).

3

SRF-1083 was received at Step I on December 6, 2022, and rejected on the same date under MDOC PD 03.02.130, which requires a prisoner to attempt to resolve the issue with the named staff member before filing a grievance. (*Id.*). The rejection included the following explanation: "You made no attempt to resolve the issue and your grievance is vague." (*Id.*).

Hannon filed his Step II appeal on December 14, 2022, wherein he explained:

> I tried to resolve this issue twice. First, I wrote the chaplain and offered to explain the Muslim religion. Secondly, I wrote the chaplain and requested to be placed on the service call-out. Neither time did the chaplain respond. The prisoner has no access to the chaplain and could not speak to him face-to-face which was circumstances [sic] beyond his control.

(*Id.* at PageID.71). Hannon's Step II appeal was received on December 20, 2022, and the Step I rejection under MDOC PD 03.02.130 was upheld on December 22, 2022. (*Id.*).

When appealing the rejection to Step III, Hannon wrote, "I have tried to talk to the chaplain about this constitutional violation and he refuse[s] to listen. He said[,] 'I can run the services how I want to!' " (*Id.*). Hannon's Step III appeal was received on January 23, 2023, and the rejection under MDOC PD 03.02.130 was upheld on February 3, 2023. (*Id.* at PageID.70).

On December 30, 2022, Hannon filed a Step I grievance form for SRF-12. (*Id.* at PageID.69). He named Tuzas and provided an incident date of December 29, 2022. (*Id.*). Hannon stated that on December 23, 2022, he wrote to Tuzas and asked

4

to be placed on the Al-Islam call-out.  (*Id.*).  Hannon explained the problem as follows:

> Chaplain M. Tuzas is retaliating against me for writing a grievance on him by refusing to place me on Al-Islam service call-out.  He has lied to me in a kite telling me that he placed me on the call-out back on November 15, 2022.  It is now over one and a half months and counting, and I haven't received not one service call-out.  His actions has [sic] forced me to inform the federal court of his denial of my right to practice my religion.

(*Id.* (capitalization modified throughout)).

SRF-12 was received at Step I on January 3, 2023, and rejected the next day under MDOC PD 03.02.130 for being vague.  (*Id.*).  The rejection noted: "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  (*Id.* (emphasis omitted)).  However, the rejection did not specify how Hannon's grievance failed to satisfy these requirements.  (*See id.*).

On January 9, 2023, Hannon appealed to Step II, writing, "I am still being denied."  (*Id.* at PageID.67).  The Step II appeal was received on January 12, 2023, and the Step I rejection under MDOC PD 03.02.130 was upheld the next day.  (*Id.*).  In an attachment, it was explained that "Prisoner Hannon was placed on the Al-Islam Service starting 11/16/2022 for each Friday morning of the month.  See attached OMNI schedule for prisoner Hannon."  (*Id.* at PageID.68).  This schedule was not provided to the Court.

Hannon submitted a Step III appeal, which was received on January 23, 2023.

5

(*Id.* at PageID.66).   The rejection under MDOC PD 03.02.130 was upheld on February 3, 2023.  (*Id.*).

## C.    Legal Standard

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that would affect "the outcome of the suit under the governing law. . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact. . . ."  *Id.* at 249–50, 255.  Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).  The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)).  Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact [to] find in its favor."  *Anderson*, 477 U.S. at 248.

## D.    Analysis

Tuzas argues that the Court should grant him summary judgment without

6

reaching the merits of Hannon's claims because Hannon failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA") before filing his complaint.

### 1. Legal Framework

Under the PLRA, prisoners may not bring actions against prison officials to challenge the conditions of their confinement without first exhausting their administrative remedies. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 523 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). And not only must prisoners exhaust their administrative remedies before filing a complaint, but they must do so "properly," meaning that they must "compl[y] with an agency's deadlines and other critical procedural rules. . . ." *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006).

The Michigan Department of Corrections ("MDOC") has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[] prisons with a fair opportunity to correct their own errors." 548 U.S. at 94. A grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d

7

569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).   Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Because exhaustion is an affirmative defense, prison officials, not inmates, carry the burden proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007).   Until a defendant proves otherwise, the Court must presume that the prisoner properly exhausted his administrative remedies before filing suit. *Id.*; *see also Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011).

> Because defendants carry the burden of proof for exhaustion, they bear an "initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)).   Summary judgment is appropriate in this context only if "there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id.* at 961 (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

*Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023).   In sum, "failure to exhaust is an affirmative defense that the defendants must plead and prove by a preponderance." *Reed v. Parsons*, No. 6:23-CV-127-REW, 2024 WL 3404607, at *3 (E.D. Ky. July 11, 2024).

## 2.   Application

Tuzas argues that Hannon failed to exhaust any claims against him because

both SRF-12 and SRF-1083 were rejected and those rejections were affirmed through Step III.  Tuzas provides the following analysis in support of his argument:

> In SRF-12, Hannon states the "Date of Incident" as December 29, 2022, but lists the date he attempted to resolve the issue as December 23, 2022—i.e., before the incident occurred.  Moreover, Hannon does not describe in the grievance the incident that allegedly occurred on December 29, 2022; the individuals involved in the December 29, 2022, incident; and how their conduct violated policy.  Because SRF-12 does not sufficiently describe the incident that allegedly occurred on December 29, 2022, it was rejected as vague.
>
> In SRF-1083, Hannon states the "Date of Incident" as November 30, 2022, and the only individual whom he contacted within two business days of November 30, 2022, to attempt to resolve the grievance was Sgt. Cunningham.  Because Sgt. Cunningham was not involved in the grievance, it was improper for Hannon to attempt to resolve the issue with Sgt. Cunningham.  Although Hannon claims that he had written Chaplain Tuzas about the issue being grieved, he alleges that contact occurred on November 27, 2022—i.e., before the date of the incident. As Hannon could not have resolved a November 30, 2022, incident before it occurred and as he did not contact Chaplain Tuzas after November 30, 2022, SRF-1083 was rejected for failing to attempt to resolve the issue being grieved.

(ECF No. 16, PageID.46–47 (internal record citations omitted)).

Tuzas is correct that "[p]roperly rejected grievances do not exhaust an inmate's administrative remedies."  *McDuff v. Jones*, No. 4:23-cv-11739, 2024 WL 3506714, at *4 (E.D. Mich. June 24, 2024), *report and recommendation adopted*, 2024 WL 3502495 (E.D. Mich. July 22, 2024).  That said, "the Court is not required to blindly accept the state's application of the procedural rules."  *Id.* (cleaned up).

The relevant procedural rules for exhaustion are found in MDOC PD

03.02.130.  Paragraph J lists the reasons that a grievance can be rejected.  The first is if "it is vague, illegible, or contains multiple unrelated issues."  MDOC PD 03.02.130(J)(1).  In a separate section, it states that a Step I grievance should conform to the following requirements: "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130(S).  Additionally, before filing a grievance, a prisoner "shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs."  MDOC PD 03.02.130(Q).

As will be explained, a reasonable trier of fact could easily conclude that Hannon exhausted his administrative remedies through SRF-12 and SRF-1083 and that they were improperly rejected.  In other words, there is a genuine issue of material fact on the issue of exhaustion and Tuzas' motion for summary judgment should be denied.

The Undersigned first turns to the confusion over dates in relation to Hannon's attempts to resolve his issues before filing his grievances.  While Tuzas is correct that the dates listed for the incidents occurred after the dates listed for Hannon's attempts to resolve the issues, this is understandable given that Hannon's grievances

10

concern continuing violations of his First Amendment rights.  In SRF-1083, Hannon

alleged that Tuzas changed the callout time for Friday prayer service to a time that

was in contravention of the Quran thus violating Hannon's First Amendment rights.[1]

Then in SRF-12, Hannon alleged that Tuzas had not placed him on the callout list

for Friday prayer service since Hannon filed SRF-1083.  The alleged incorrect

timing of the prayer service and Hannon's alleged inability to attend it are violations

that occur on a weekly, recurring basis thus triggering the "continuing violation

doctrine."  *Dykes v. Corizon, Inc.*, No. 2:22-cv-113, 2024 WL 3541642, at *2 (W.D.

Mich. July 18, 2024).

> As explained in *Dykes*,

> "[w]here there is 'one, continuing harm' or a single course of conduct
> (which can lead to discrete incidents of harm), filing repeat grievances
> is unnecessary." *Morgan v. Trierweiler*, 67 F.4th 362, 369-70 (6th Cir.
> 2023) (quoting *Siggers v. Campbell*, 652 F.3d 681, 692-93 (6th Cir.
> 2011)).  In *Morgan*, the Sixth Circuit found that a prisoner had properly
> exhausted his free exercise claim when he filed a single grievance
> complaining that "he was denied Halal food *continuously*, not just at
> particular meals[.]"  *Id.* at 370.  It stressed that so long as the
> "continuing nature of the harm" is evident from the grievance, a
> prisoner need not file a separate grievance each time the harm re-
> occurs.  *Id.*

---

[1] A simple Google search provides context for Hannon's explanation of the proper timing
for congregational prayer.  For instance, one source provides: "Jumʿah, Friday of the
Muslim week and the special noon service on Friday that all adult, male, free Muslims are
obliged to attend.  The jumʿah, which replaces the usual noon ritual prayer (ṣalāt al-ẓuhr),
must take place before a sizable number of Muslims (according to some legal scholars, 40)
in  one  central  mosque  in  each  locality."    *Jum'ah*,  Britannica,
https://www.britannica.com/topic/jumah (last visited Sept. 24, 2024).

*Id.* In keeping with *Morgan*, the *Dykes* court concluded that the plaintiff "was not required to file a grievance every time MDOC provided him a meal that triggered medical issues." *Id.* at *3.

Here, the continuing nature of the harms was apparent from Hannon's Step I grievances in both SRF-1083 and SRF-12. Hannon explained in SRF-1083 that Tuzas, to accommodate his own interests, changed the callout time for the weekly Friday prayer service to a time that was not permitted by the Quran. Then in SRF-12, Hannon explained that after filing SRF-1083, Tuzas had failed to put Hannon on the Friday prayer service callout list for over a month. The rescheduling of a weekly prayer service and the ability of Hannon to attend said weekly prayer service are evidently both harms of a continuing nature.

In his response to the instant motion, Hannon explains that the dates listed on the Step I grievance forms correspond to dates relevant to these harms. They reflect dates on which Hannon wrote to Tuzas and on which Tuzas responded. Ultimately, given the continuing violations at issue, Hannon's grievances contain enough detail and pertinent dates to satisfy the MDOC's requirements regarding the contents of a Step I grievance and his "grievance[s] sufficiently placed MDOC on notice that he alleged a continuing violation of his rights." *Shelton v. Oaks*, No. 21-11614, 2022 WL 6584563, at *4 (E.D. Mich. July 30, 2022) (citing cases), *report and recommendation adopted*, 2022 WL 4117023 (E.D. Mich. Sept. 9, 2022); *see also*

12

*Savoie v. Oliver*, ___ F. Supp. 3d ___, ___, No. 2:23-cv-11357, 2024 WL 1758263, at *5 (E.D. Mich. Apr. 24, 2024) ("[A] grievance is sufficient if it gives fair notice of the alleged mistreatment or misconduct forming the basis of the claim." (internal quotation marks and citation omitted)).

Next, the Undersigned will address Tuzas' argument that Hannon failed to attempt to resolve the issues with him before filing grievances.  In SRF-1083, Hannon stated that he wrote to Tuzas on November 27, 2022, but had yet to receive a response, in addition to discussing the issue with Sergeant Cunningham on December 2, 2022.  In his Step II appeal for SRF-1083, Hannon explained that he sent two letters to Tuzas, and that as a prisoner, he is unable to otherwise communicate with Tuzas.  And in SRF-12, Hannon stated that he had written to Tuzas asking to be placed on the callout list for Friday prayer services.

Under MDOC PD 03.02.130(Q), a prisoner is only required to *attempt* to resolve an issue before filing a grievance and this requirement is excused if caused "by circumstances beyond [the prisoner's] control."  When faced with a similar argument, a judge in this district explained:

> Here, the forms CSJ-247A for PNGs B, D, and E state that [the p]laintiff asked for a sergeant or a captain and was refused.  And [the p]laintiff argued at Steps II and III that his requests for a sergeant or a captain qualified as attempts to resolve the grievances under MDOC's grievance procedure, and that these attempts were thwarted by [prison] staff.  A reasonable jury could find that these requests for a sergeant or a captain qualified as attempts to resolve PNGs B, D, and E, or else that the refusals by [prison] staff to summon a sergeant or a captain were

circumstances outside [the p]laintiff's control that prevented him attempting to resolve these grievances.

*Wilson v. Joseph*, No. 23-cv-10863, 2024 WL 4100490, at *14 (E.D. Mich. Sept. 4, 2024).  Given Hannon's assertions in his grievances and appeals that he wrote to Tuzas multiple times and his inability as a prisoner to otherwise communicate with Tuzas, there is at the very least a genuine issue of material fact that Hannon attempted resolution with Tuzas or that he was prevented from doing so by circumstances outside of his control.  Accordingly, Tuzas' motion for summary judgment should be denied.

### E.  Conclusion

For these reasons, **IT IS RECOMMENDED** that Tuzas' motion for summary judgment (ECF No. 16) be **DENIED**.  If adopted, the Undersigned will enter a scheduling order setting deadlines for the completion of discovery and the submission of dispositive motions.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right

14

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 1, 2024                    s/PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge